682 S.E.2d 252
**K & A ACQUISITION GROUP, LLC, Appellant,**

v.

**ISLAND POINTE, LLC; South Carolina Department of Transportation, Elizabeth S. Mabry, in her Official Capacity as Executive Director of the South Carolina Department of Transportation; and City of Folly Beach, South Carolina, Respondents.**

No. 26696.

Supreme Court of South Carolina.

Heard April 21, 2009.

Filed Aug. 10, 2009.

C. Mitchell Brown, of Nelson, Mullins, Riley & Scarborough, of Columbia, Robert H. Brunson and Erin E. Richardson, both of Nelson, Mullins, Riley & Scarborough, of Charleston, for Appellant.

Beacham O. Brooker, Jr., of Columbia, Ellison D. Smith, IV, of Smith, Bundy, Bybee & Barnett, of Mt. Pleasant, James B. Richardson, Jr., of Columbia, Michael R. Daniel, of Elloree, Otis B. Peeples, Jr., of Charleston, for Respondents.

## AFFIRMED AS MODIFIED

Justice BEATTY:

In this declaratory judgment action, K & A Acquisition Group, LLC (K & A), appeals the master-in-equity's order finding that a .42 acre parcel of coastal property, which was part of a former Folly Beach toll road, was "abandoned" by the South Carolina Department of Transportation (SCDOT) and properly conveyed by a quitclaim deed to private landowners. Pursuant to Rule 204(b), SCACR, this Court certified this appeal from the Court of Appeals. We affirm as modified.

## FACTUAL/PROCEDURAL HISTORY

In March 2005, K & A purchased Long Island located to the east of Peas Island across from Folly Creek. Long Island is annexed into the City of Folly Beach. K & A purchased this property with the expectation that it would construct a residential development on Long Island with approximately fifty to sixty home sites.

Because there is no means of vehicular access to Long Island across Folly Creek, K & A sought to purchase a .42 acre parcel of property on neighboring Peas Island from Henry and Linda Walker ("the Walker tract"). This parcel

constituted a portion of the "old" Folly Beach toll road which originated in 1923 and has a lengthy procedural history.

Prior to 1923, the Folly Beach Corporation, which owned and developed a significant portion of Folly Island, built a private road which: started on James Island, crossed Peas Island, bridged Folly Creek to Long Island, crossed Long Island, extended from Long Island to Big Oak Island and Little Oak Island, and ultimately crossed Folly River and ended on Folly Island.

On March 16, 1923, the General Assembly created the Folly Roadway Company "for the purpose of constructing, maintaining, and operating a toll and turnpike road from a point on James' Island, in the County of Charleston, to Folly Island in the said county, over the route of the existing road, causeways and bridges now connecting said islands, with the right to charge tolls on said route as fixed by law, and to erect one or more gates on said route for the collection of the same." ("1923 Legislative Act"). Act No. 288, 1923 S.C. Acts 557.

Subsequently, the Folly Beach Corporation conveyed the existing road to the Folly Roadway Company by deed recorded on April 13, 1923.

After two years of operation, the Folly Roadway Company decided to rebuild the road and bridges and straighten the route of the toll road by extending the causeway, which connected James Island and Peas Island, all the way to Folly Beach. The construction of this new route would eliminate a portion of the original toll road which crossed Peas Island, Long Island, and two other marsh islands.

By legislative act, the General Assembly authorized the Folly Roadway Company to implement its plan to relocate the toll road. Act No. 34, 1926 S.C. Acts 1441. In order to finance the construction of the "new" Folly Beach Road, the Folly Roadway Company issued $380,000 in bonds secured by mortgage of its properties, including the property underlying the "old" toll road route, to Citizens and Southern Bank of Savannah, Georgia. According to the Folly Roadway Company, the project resulted in "practically a new road with its necessary bridges, causeways ... connecting said Folly Island with James Island, S.C."

On November 28, 1939, Charleston County offered to purchase the toll road. The Folly Roadway Company rejected the offer on the ground it refused to sell the roadway for less than the amount due on its outstanding bonds. Subsequently, the bank securing the bonded indebtedness foreclosed on the Folly Roadway Company's property. At the foreclosure sale, Charleston County purchased all of the property owned by the Folly Roadway Company.

On April 3, 1943, the General Assembly authorized and directed the State Highway Commission (n/k/a "SCDOT") to purchase from Charleston County the "Folly Beach Road in Charleston County, to Free the Said Road of Toll Charges and to Authorize Charleston County to Sell Said Road to the Said Commission." Act No. 64, 1943 S.C. Acts 85.

According to the SCDOT's records, there was no maintenance performed on the remnants of the "old" route to Folly Beach which remained on Peas Island, Long Island, Big Oak Island, and then ran into private property. These records also reflect that no portion of the "old" route was ever assigned a number as part of the State Highway System.

Not until 2002, did the SCDOT realize that it owned the property at issue. At that time, an attorney for the Walkers requested a quitclaim deed from the SCDOT to remove a cloud on the title to their property. The Walkers, while attempting to sell their property, discovered that their house on Peas Island was located on top of a portion of the "old" Folly Beach Road toll route.

By quitclaim deed dated April 3, 2002, the SCDOT conveyed to the Walkers the .42 acre tract of land on Peas Island for consideration in the amount of $1.00.

Because K & A believed the "chief and most available means of access from Long Island to Folly Road" was a portion of property located across neighboring Peas Island, it sought to purchase the Walker tract and to obtain regulatory approval for a bridge connecting Long Island to Peas Island. K & A claimed the purchase of the parcel was necessary to ensure a right of way from the residential development on Long Island to the mainland.

Shortly after K & A purchased Long Island, Island Pointe, LLC ("Island Pointe") purchased Peas Island and obtained title insurance on the entire tract which included the Walker tract.[1]  After the City of Folly Beach approved the residential development of Peas Island, Island Pointe proceeded with its development plan.

K  & A filed this declaratory judgment action against Island Pointe, the SCDOT, and the City of Folly Beach.  In terms of relief, K & A essentially sought for the trial court to declare that the Walker tract remained a public right of way.  In support of this request for relief, K & A claimed the SCDOT did not abandon the property and did not properly convey it to the Walkers.

After a hearing, the master-in-equity ruled against K & A, finding: (1) the right of way dedicated to the public on the "old" Folly Beach toll road was transferred to the "new" Folly Beach toll road, (2) the SCDOT properly abandoned the portion of its property that once comprised the "old" Folly Beach toll road, (3) the SCDOT properly disposed of a portion of the property by means of a quitclaim deed to the Walkers, and (4) it did not have jurisdiction to declare that a public right of way still existed over the "old" route in question given such a decision would deprive landowners along this route, who were not joined as parties, an opportunity to protect their property interests.  The master-in-equity denied K & A's motion for reconsideration.

K  & A appealed the master-in-equity's decision to the Court of Appeals.  Pursuant to Rule 204(b), SCACR, this Court certified this appeal from the Court of Appeals.

## ISSUES

I.  Should the court enforce a deed that purports to convey a fee simple interest from the State to a private party if the State did not "vigorously attempt to sell the property by advertising for competitive bids in local newspapers or by direct negotiations" as required by South Carolina Code Ann. § 57–5–340?

---

1.  The Walkers sold the .42 acre tract with an additional 1.5 acres on Peas Island to Island Pointe for $2,000,000.

II. If a deed states that it is "subject to any and all existing reservations, easements, rights of way, [and] control of access," does the deed transfer the public right of way existing on the property conveyed in the deed to the grantee?

III. Is a dedicated public right of way on the path of a former toll road "abandoned" when the route of the toll road is moved but there was no "unequivocal act showing a clear intent to abandon" the right of way and undisputed evidence supports continued public use of the road after the supposed "abandonment in fact?"

IV. Are current owners of property potentially subject to a public right of way "indispensable parties" to litigation in which a non-adjoining property owner is challenging a deed potentially subject to a similar public right of way?

## STANDARD OF REVIEW

■ "A suit for declaratory judgment is neither legal nor equitable, but is determined by the nature of the underlying issue." *Felts v. Richland County*, 303 S.C. 354, 356, 400 S.E.2d 781, 782 (1991).

■ The determination of whether property has been dedicated to the public is an action in equity. *State v. Beach Co.*, 271 S.C. 425, 248 S.E.2d 115 (1978); *Mack v. Edens*, 320 S.C. 236, 464 S.E.2d 124 (Ct.App.1995). "If the action is viewed as interpreting a deed, it is an equitable matter and the appellate court may review the evidence to determine the facts in accordance with the court's view of the preponderance of the evidence." *Slear v. Hanna*, 329 S.C. 407, 410, 496 S.E.2d 633, 635 (1998).

■ Because this is an action in equity referred to a master-in-equity for final judgment, we may find facts in accordance with our own view of the preponderance of the evidence. *Thomas v. Mitchell*, 287 S.C. 35, 336 S.E.2d 154 (Ct.App.1985). We, however, are not required to ignore the findings of the trial judge, who heard and saw the witnesses. *Id.* at 38, 336 S.E.2d at 155.

## DISCUSSION

Although K & A argues its issues in the above-listed sequence, we believe that in the interest of clarity and logical progression the issues should be addressed out of the "briefed" order.

We find this appeal essentially presents four questions: (1) was the "old" Folly Beach toll road dedicated to the public; (2) if so, did the construction or relocation of the "new" Folly Beach toll road effectively abolish the public easement on the "old" Folly Beach Road; (3) if the public easement on the "old" Folly Beach toll road remained intact after the relocation, was it abandoned by the SCDOT; and (4) if abandoned, did the SCDOT properly convey a portion of this property? [2]

In short answer, we find the "old" Folly Beach Road was dedicated to the public and this public easement remained intact after the new road was created and until the SCDOT affirmatively abandoned the route of the former toll road. Additionally, we hold the SCDOT properly conveyed by quitclaim deed a portion of this abandoned property to the Walkers.

### I.

Although K & A agrees with the master-in-equity's finding that the "old" Folly Beach toll road was dedicated to the public, it contends the master-in-equity erred in finding this was a "qualified public easement" that ran with the toll road. Because the right of way in the "old" Folly Beach toll road was properly dedicated to the public, K & A claims it remained dedicated to the public even after the Folly Roadway Company relocated the road and ceased operation of the original toll road.

---

**2.** We note the Respondents question whether K & A has standing to challenge the SCDOT's conveyance of the Walker tract and, in turn, Island Pointe's ownership of the Walker tract. Because this issue was neither raised to nor ruled upon by the master-in-equity, we find it is not preserved for this Court's review. *See Lucas v. Rawl Family Ltd. P'ship*, 359 S.C. 505, 511, 598 S.E.2d 712, 715 (2004) (stating an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review).

We agree with K & A's contention. For reasons that will be discussed, we find the relocation of the "new" Folly Beach toll road did not abolish the public right of way that was properly created in the "old" Folly Beach toll road.

"The essence of dedication is that it shall be for the use of the public at large." *Safety Bldg. & Loan Co. v. Lyles*, 131 S.C. 542, 544, 128 S.E. 724, 724 (1925). A dedication "must be made to the use of the public exclusively, and not merely to the use of the public in connection with a user by the owners in such measure as they may desire." *Id.* at 545, 128 S.E. at 724.

Applying these principles to the instant case, we find the "old" Folly Beach toll road was unequivocally dedicated to the public. Pursuant to the 1923 Legislative Act, the General Assembly incorporated the Folly Roadway Company and authorized it to operate the "old" Folly Beach Road as a toll road. Upon receiving this charter, the Folly Beach Corporation conveyed the "old" Folly Beach Road to the Folly Roadway Company. In turn, the Folly Roadway Company began operating the existing route as a toll road and effectively dedicated the road to the public.

Two years later, this Court explicitly recognized the Folly Roadway Company's dedication of the "old" Folly Beach Road to the public. In *State v. Olasov*, 133 S.C. 139, 130 S.E. 514 (1925), this Court affirmed the conviction of Olasov for trespass on the land of another which arose out of Olasov's refusal to pay the toll on the "old" Folly Beach Road. Because Olasov had purchased several lots on Folly Beach from the Folly Beach Corporation, which included a "free right" to use the "old" Folly Beach Road, Olasov claimed he did not have to pay the toll. In affirming Olasov's conviction, this Court found Olasov's easement to use the "old" Folly Beach Road was terminated upon the sale of the road to the Folly Roadway Company. *Id.* at 144, 130 S.E. at 515. In a concurring opinion, one justice stated, "While unquestionably the turnpike company has dedicated the highway to the public and the easement is a public easement and not private property, the turnpike company still retains the fee-simple title to the land. The public has an easement to use the road upon the payment of tolls provided for in the act incorporating the turnpike

company; that is, the public has a qualified easement." *Id.* at 146, 130 S.E. at 516 (Cothran, J., concurring).

Furthermore, there is evidence in the record that the Folly Roadway Company believed the toll road was dedicated to the public. In its Complaint dated July 22, 1940, in which it challenged Charleston County's condemnation action, the Folly Roadway Company specifically stated that the "old" Folly Beach toll road had been dedicated to the public.

## II.

Because the "old" Folly Beach Road had been dedicated to the public, K & A asserts the master-in-equity erred in determining that the construction of the "new" Folly Beach toll road effectively "transferred" the original public dedication from the "old" road to the "new" road.

We find the master-in-equity erred in concluding that the public dedication was "transferred by the changing of the route of the road." Given the "old" Folly Beach Road was established as a highway and dedicated to the public, the public right of way continued until it was affirmatively abandoned by the SCDOT.

The mere act of relocating the toll road did not have the effect of abolishing the public easement created in the original route. Although the Folly Roadway Company may have vacated the "old" Folly Beach route, this action did not operate to eliminate the public right of way. Thus, the "old" Folly Beach Road remained dedicated to the public despite the relocation. *See* 39A C.J.S. *Highways* § 128 (Supp.2008) ("While the relocation of a highway by the public authority may be sufficient to show the abandonment of the old highway, such relocation does not automatically effect the abandonment of an old easement."); 39 Am.Jur.2d *Highways, Streets, & Bridges* § 148 (2008) ("Once established, a public highway does not lose its character as a public road unless it is either vacated by the authorities in the manner prescribed by statute or abandoned."); *see also* A.C. McI., Annotation, *What Justifies Discontinuance of a Highway* ?, 68 A.L.R. 794 (1930 & Supp.2008) (noting that highways cannot be vacated unless they are useless, inconvenient or burdensome and concluding that whether a highway should be vacated, or discontinued, is

determined primarily by considerations of its necessity or public utility).[3]

Moreover, this Court has specifically found that once a toll road is dedicated to the public the easement is not revoked upon cessation of the toll road operation. *Scheper v. Clark,* 124 S.C. 302, 312, 117 S.E. 599, 602 (1923) (" 'The weight of authority and sound reason concur in holding that, upon termination of the franchise, the road [a toll road] remains as before, a public highway, wholly freed from the burden of tolls.' " (quoting *Allison v. R.C. Gravel–Road Co.,* 138 Mo. 332, 39 S.W. 910, 913 (1897))).

### III.

In view of our conclusion that the relocation of the original toll road did not operate to eliminate the public easement, the question becomes whether SCDOT properly abandoned the right of way. *See Hoogenboom v. City of Beaufort,* 315 S.C. 306, 319 n. 7, 433 S.E.2d 875, 884 n. 7 (Ct.App.1993) ("A right of way created by dedication may be lost by abandonment.").

As we interpret the trial order, the master-in-equity equated the term "discontinuance" with "abandonment." In his order, the master in-equity states, "abandonment or discontinuance of the 'old' route was effectively accomplished in 1926 upon completion of the 'new' road by the Folly Roadway Company pursuant to legislative action." Based on this belief, the master-in-equity concluded "this discontinuance operated as an affirmative abandonment in fact of the old roadway."

---

**3.** Although not expressly stated, section 57–5–120 of the South Carolina Code supports this conclusion in that the SCDOT may abandon a section of highway which is relocated. This section implies that the SCDOT must take additional steps to abandon a road beyond mere relocation. *See* S.C.Code Ann. § 57–5–120 (2006) ("The department may abandon as a part of the state highway system any section of highway which may be relocated, and every such section so abandoned as a part of the state highway system shall revert to the jurisdiction of the respective appropriate local authorities involved or be abandoned as a public way. But the department, in its discretion, may retain in the system any such relocated section when it serves as a needed connection to the new section or when it serves as a proper part of the state highway system.").

■■■ Although we agree with the master-in-equity's determination that the SCDOT abandoned the old route, we disagree that the "discontinuance" or relocation of the route was sufficient to constitute abandonment. The terms "discontinuance" and "abandonment" are not synonymous. *See Marrin v. Spearow*, 35 Conn.App. 398, 646 A.2d 254, 257 (1994) (" 'Discontinuance' and 'abandonment' are not synonymous terms as applied to highways. A highway may be extinguished by direct action through governmental agencies, in which case it is said to be discontinued; or by nonuser by the public for a long period of time with the intention to abandon, in which case it is said to be abandoned." (citation omitted)); *Ord v. Fugate*, 207 Va. 752, 152 S.E.2d 54, 59 (1967) (noting that discontinuance of public road should not carry the same effect as abandonment and stating "under the present statutes the discontinuance of a secondary road means merely that it is removed from the state secondary road system. Discontinuance of a road is a determination only that it no longer serves public convenience warranting its maintenance at public expense. The effect of discontinuance upon a road is not to eliminate it as a public road or to render it unavailable for public use"); *see also Wilson v. Greenville County*, 110 S.C. 321, 325, 96 S.E. 301, 302 (1918) (recognizing that discontinuance of a public highway and abandonment are two acts which are "separate and distinct in fact and in law").

■■■ The discontinuance of a highway may be evidence of abandonment. However, mere discontinuance is not sufficient to prove abandonment.[4] This conclusion is supported by our

---

4. We note the existence of an old case which appears to equate the term "discontinuance" with "abandonment." However, we find the case is distinguishable and the statement constitutes dicta.

In *Keenan v. Broad River Power Co.*, 163 S.C. 133, 161 S.E. 330 (1931), a private landowner brought suit to recover damages resulting from the defendants' trespass. Prior to the action, the defendants had acquired an easement over the landowner's property for the operation of their railroad. Because the defendants ceased operation of the railway over this property, this Court found the "discontinuance" operated as an "abandonment" of the right of way which could not be revived. Thus, the plaintiff was entitled to compensation for the damages incurred by the defendants' re-entry upon the property.

*Keenan* is distinguishable from the instant case in that it involved a private right of way. Moreover, this Court's statement regarding the two terms constituted dicta given the "Defendants practically ad-

case law and our state's statutory scheme governing the procedure required for abandonment.

Under our state's case law, for a party to prove abandonment it must present evidence beyond the mere relocation of a road. *See Wessinger v. Goza,* 231 S.C. 607, 611, 99 S.E.2d 395, 397 (1957) ("It is axiomatic that a public highway is not abandoned simply because a new highway is built."). Instead, a party must "show the abandonment by clear and unequivocable evidence." *Carolina Land Co. v. Bland,* 265 S.C. 98, 109, 217 S.E.2d 16, 21 (1975). This Court has explained the principles of abandonment as follows:

'An abandonment occurs where the use for which the property is dedicated becomes impossible of execution, or where the object of the use for which the property is dedicated wholly fails. Any use which is not inconsistent with the declared purpose of a dedication will not support a charge of abandonment.'

'Acts of municipality. The rights of purchasers under a map and of the general public cannot be lost by the unauthorized acts of the governing or controlling officials of the municipality, or by their neglect, but only by legal abandonment by the public as well as the officials.' 26 C.J.S. *Dedication* s 63 at page 552.

'An easement created by dedication may be abandoned by unequivocal acts showing a clear intent to abandon. To constitute abandonment, the use for which the property is dedicated must become impossible of execution, or the object of the use must wholly fail. Generally, a mere misuser or nonuser does not constitute abandonment of land dedicated to public use.' 23 Am.Jur.(2d) 57, Dedication, Sec. 66.

*City of Myrtle Beach v. Parker,* 260 S.C. 475, 486, 197 S.E.2d 290, 295–96 (1973).

Turning to the instant case, we find the SCDOT offered evidence of "unequivocal acts showing a clear intent to abandon" the public easement.

---

mit[ted] that they had abandoned the right of way" even though they used the term discontinued. *Id.* at 136, 161 S.E. at 331. Thus, it was unnecessary for this Court to define or analyze these two terms.

Although not dispositive, the Folly Roadway Company re-routed the "old" Folly Beach Road. After this relocation, the use and maintenance of the old road significantly diminished because vehicular travel used the newly-created road. Notably, after the relocation of the road in 1926, a one-hundred-foot private right of way over Big Oak Island was granted to property owners on Long Island as a means of access to Long Island from the "new" road. That same year, the Folly Roadway Company deeded to H.T. and Alice Ebner a portion of the "old" route from the end of Little Oak Island to Folly Island, which included the bridge over the Folly River. In 1986, the SCDOT also issued by quitclaim deed to Harry L. Joye, Jr. and Cecelia Self a portion of the "old" route which crossed Big Oak Island. Significantly, the Walkers built their home over a portion of the "old" route. If the public right of way still remained on the "old" road, then the above easement would have been unnecessary, the SCDOT would not have deeded the property to the Ebners, and the Walkers would not have been able to construct their home in that particular location.

Based on the foregoing, we find the SCDOT properly abandoned the "old" Folly Beach Road, which included the Walker tract. *Cf. Williams v. Woodward*, 240 S.W.2d 94 (Ky.Ct.App.1951) (holding that where the State Highway Department abandoned roadway and relocated new highway, abutting property owners built fences around roadway and otherwise obstructed it, and roadway had not been used to any substantial extent by public for some years, the actions of the State Highway Department, and of the abutting property owners and nonuser by the public, constituted an abandonment of the roadway); *Hart v. Town of Shafter*, 348 Ill.App.3d 713, 284 Ill.Dec. 699, 810 N.E.2d 489, 491 (2004) ("'[A]n abandonment will be found only where the public has acquired the legal right to another road or where the necessity for another road has ceased to exist."); *see* J.E.M., Annotation, *Alteration or Relocation of Street or Highway as Abandonment or Vacation of Parts Not Included*, 158 A.L.R. 543 (1945 & Supp.2008) (analyzing cases and considering question of whether, or under what circumstances, a change in a public way will work an abandonment, vacation, or discontinuance of the former way to the extent of the change).

Furthermore, once the public easement on the "old" Folly Beach Road was abandoned, we find it could not be essentially "rededicated," as contended by K & A, through nominal use by two or three Peas Island landowners or the placement of utilities during the 1970s or 1980s.

## IV.

K   & A argues the master-in-equity erred in enforcing the conveyance by quitclaim deed from the SCDOT to the Walkers on two grounds.   Initially, K & A claims the SCDOT failed to comply with the statutory requirements of section 57–5–340 of the South Carolina Code. Even if the statutory requirements were satisfied, K & A asserts the language of the deed expressly subjected the transferred property to existing easements.

## A.

As stated in the deed, the SCDOT conveyed the property to the Walkers pursuant to the authority established in section 57–5–340 of the South Carolina Code. This section provides in relevant part:

> The department shall continuously inventory all of its real property.   When, in the judgement [sic] of the department any real estate acquired as provided in this chapter is no longer necessary for the proper operation of the department or highway systems, *the department shall vigorously attempt to sell the property by advertising for competitive bids in local newspapers or by direct negotiations, but in every case of the sale or transfer of any real estate by the commission or the department, the sale or transfer shall be made public by publishing notice of it in the minutes of the next succeeding meeting of the commission.*   The commission and the department shall convey by deed, signed by the Secretary of the Department of Transportation and the Deputy Director of the Division of Finance and Administration, any real estate disposed of under this section.   Any funds derived from the sale of surplus property by authority of this section shall be credited to the funding category from which funds were drawn to finance the department's acquisition of the property.

S.C.Code Ann. § 57–5–340 (2006 & Supp.2008) (emphasis added). K & A asserts the deed should not be enforced because the SCDOT did not "vigorously attempt to sell the property by advertising for competitive bids in local newspapers or by direct negotiations."

K & A is correct that the SCDOT did not advertise for competitive bids on the Walker property. However, we find this was not necessary to be in compliance with section 57–5–340. As evidenced by the correspondence between the Walkers' attorney and the SCDOT, there were "direct negotiations" between the parties. Because the requirements for the SCDOT are written using the disjunctive "or," we conclude the General Assembly has authorized the SCDOT to sell surplus property either through advertisement or direct negotiations. See Brewer v. Brewer, 242 S.C. 9, 14, 129 S.E.2d 736, 738 (1963) (noting that the use of the word "or" in a statute "is a disjunctive particle that marks an alternative"); see also Hawkins v. Bruno Yacht Sales, Inc., 353 S.C. 31, 39, 577 S.E.2d 202, 207 (2003) (recognizing the cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature); Hitachi Data Sys. Corp. v. Leatherman, 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992) (noting the words of the statute must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's operation). Furthermore, as testified to at the hearing before the master-in-equity, the SCDOT published notice of the transfer "in the minutes of the next succeeding meeting of the commission." Accordingly, we find the SCDOT sale of the Walker tract for consideration of $1.00 was sufficient to satisfy the requisite statutory procedure.[5]

---

5. Our decision should in no way be construed as providing the SCDOT with "unbridled" authority to convey public property to private landowners. We believe the facts of this case are unique and will not recur on a frequent basis. Moreover, the term "direct negotiations" necessarily requires a good faith effort on the part of the SCDOT to procure the best deal given the "funds derived from the sale of surplus property by authority of this section shall be credited to the funding category from which funds were drawn to finance the department's acquisition of the property." S.C.Code Ann. § 57–5–340 (2006 & Supp.2008). In view of this statutory provision, it is in the best interest of the SCDOT to

## B.

Even assuming the requirements of section 57–5–340 were satisfied by the means of conveyance, K & A contends a provision of the Walker deed identifies the existence of the public right of way on Peas Island. The provision relied on by K & A states, "This conveyance is being made subject to any and all existing public utility rights of user, reservations, easements, rights of way, control of access, zoning ordinances and restrictions or protective covenants that may appear on record or on the premises, other than those hereby released."

In construing a deed, "the intention of the grantor must be ascertained and effectuated, unless that intention contravenes some well settled rule of law or public policy." *Wayburn v. Smith,* 270 S.C. 38, 41, 239 S.E.2d 890, 892 (1977). "In determining the grantor's intent, the deed must be construed as a whole and effect given to every part if it can be done consistently with the law." *Gardner v. Mozingo,* 293 S.C. 23, 25, 358 S.E.2d 390, 391–92 (1987). "The intention of the grantor must be found within the four corners of the deed." *Id.* at 25, 358 S.E.2d at 392. "When intention is not expressed accurately in the deed evidence *aliunde* may be admitted to supply or explain it." *Id.* "The instrument is not thereby varied or contradicted but is explained or corrected." *Id.* " 'A grant of an easement is to be construed in accordance with the rules applied to deeds and other written instruments.' " *Binkley v. Rabon Creek Watershed Conservation Dist. of Fountain Inn,* 348 S.C. 58, 71, 558 S.E.2d 902, 909 (Ct.App.2001) (quoting 28A C.J.S. *Easements* § 57 (1996)).

Applying these established rules of interpreting deeds, we find the property conveyed to the Walkers was not subject to a public easement. As previously stated, any public easement on the "old" Folly Beach Road had been abandoned by the SCDOT well before the 2002 conveyance. Significantly, the SCDOT did not even realize it had an interest in the property until the Walkers' attorney requested a quitclaim deed. Moreover, given the Walkers' home was built on top of the .42 acre parcel, it would have been nonsensical for the

receive the most favorable financial return on its conveyance of surplus property.

SCDOT to reserve a public right of way over this property. Additionally, we believe the terms of the deed referencing a right of way constituted "boilerplate" language which did not specifically identify any right of way. Furthermore, we note the SCDOT issued a similar quitclaim deed to other Peas Island landowners in a 1986 conveyance, thus, indicating the absence of a public easement.

## V.

Finally, K & A argues the master-in-equity erred in concluding he was without jurisdiction to find that a public right of way existed over the "old" Folly Beach Road given the other potentially-affected landowners were not joined in the lawsuit. K & A avers this ruling was erroneous because a ruling that the public right of way continues to exist would not disturb the property rights of landowners on Big Oak Island or Little Oak Island.

In view of our conclusion that the SCDOT abandoned the public easement on the "old" Folly Beach Road, we need not address this issue. *See Hagood v. Sommerville*, 362 S.C. 191, 199, 607 S.E.2d 707, 711 (2005) (stating the appellate court need not address additional issues when resolution of prior issue is dispositive).

In any event, we find the master-in-equity's conclusion was erroneous given the proper parties were joined in the lawsuit. Because the evidence indisputably established that the public easement had been abandoned well before the 2002 conveyance to the Walkers, the necessary parties to the lawsuit were only those who had an interest in the specific .42 acre parcel. Thus, Island Pointe, who purchased the Walker property, as well as the SCDOT and the City of Folly Beach were the only indispensable parties. *See S.C. Dep't of Transp. v. Hinson Family Holdings, LLC*, 361 S.C. 649, 655, 606 S.E.2d 781, 784–85 (2004) (stating "DOT and the local municipality are the indispensable parties that must be joined in an action to abandon a public road").

## CONCLUSION

We agree with the master-in-equity's ultimate decision to find the SCDOT abandoned the "old" Folly Beach Road and

properly conveyed a portion of this property to the Walkers. However, we modify the master-in-equity's order regarding the analysis of abandonment.

We find the mere relocation or "discontinuance" of the "old" Folly Beach Road did not operate to abolish the previously established public right of way and to transfer it to the "new" Folly Beach Road. Instead, we conclude the original public easement remained intact until the SCDOT affirmatively abandoned the property. Additionally, we hold the SCDOT properly conveyed the .42 acre parcel at issue by complying with the statutory requirements of section 57–5–340 and issuing a valid deed to the Walkers. Accordingly, the decision of the master-in-equity is

**AFFIRMED AS MODIFIED.**

TOAL, C.J., WALLER, PLEICONES and KITTREDGE, JJ., concur.