716 S.E.2d 682

**CRYSTAL PINES HOMEOWNERS ASSOCIATION, INC., Respondent,**

v.

**Don E. PHILLIPS, Crystal Lake Land Developers, Inc., and Crystal Pines Yacht Club, LLC, Appellants.**

No. 4832.

Court of Appeals of South Carolina.

Heard Dec. 9, 2010.

Decided May 4, 2011.

Withdrawn, Substituted and Refiled June 23, 2011.

Rehearing Denied June 23, 2011.

528

530 

John D. Hudson and Shaun Blake, both of Columbia, for Appellants.

Harry Clayton Walker, Jr., of Columbia, for Respondent.

KONDUROS, J.

Don E. Phillips appeals the master-in-equity's finding that Phillips, as successor in interest to Crystal Lake Land Developers, Inc. (CLLD), is responsible for maintaining roads in the Crystal Pines subdivision (Crystal Pines). Phillips and the Crystal Pines Yacht Club, LLC (the Yacht Club) appeal the master's ruling that residents of Crystal Pines had either acquired or were granted an easement for use of a boat ramp in the subdivision. We affirm in part and reverse in part.

## FACTS

Phillips was the sole shareholder and officer in CLLD. In 1979, CLLD began developing Crystal Pines. In 1981, CLLD deeded the roads in Crystal Pines to the Crystal Lake Road Company (the Road Company). All homeowners in Crystal Pines were members of the Road Company. The deed contained the following provision:

> The undersigned [CLLD] by execution of this instrument hereby agrees at its own personal cost and expense to open the unopened portion as may be necessary for development, of Crystal Pines Drive, Knob Cone Road, Red Fox Trail, Whippoor Will Court, and Torrey Pine Lane as described on Exhibit "A" hereto and to pave the same; determine and carry out or cause to be performed all improvements, maintenance and repair of the said roads as nearly as may be practicable in the same condition and repair as originally paved. The said roads shall be kept free of all obstructions so as to be open for the passage of fire, police, and other emergency vehicle personnel and equipment at all times and by the owners of portion of the real property described in

Exhibit "B" hereto and their agents, guests, invitees and employees; . . . .

From 1981 through 1986, the Road Company operated as an unincorporated association and simple homeowner's association. In 1987, the Road Company changed its name to the Crystal Pines Homeowners Association (HOA), although it was not technically incorporated until 1997. Beginning in 1996, CLLD drafted a proposed deed granting title to the road to the HOA instead of the Road Company. The deed contained an attachment that placed road maintenance obligations on the HOA. In 1997, CLLD conveyed its remaining interest in Crystal Pines to Phillips with Phillips paying CLLD $392,679 and assuming CLLD's mortgage debt. CLLD was then dissolved.

Phillips unsuccessfully tried to have the second deed and attachment executed. In 1998, Phillips filed an amendment to the restrictions governing certain sections of Crystal Pines. The amendment stated the HOA was responsible for road maintenance in Crystal Pines. Phillips repaired the roads in Crystal Pines in the early 1990s, but further maintenance is now required. Phillips has refused to perform any additional work.

Additionally, in 1980, CLLD constructed a boat ramp in Crystal Pines. George Bugenske, a Crystal Pines resident, testified homeowners regularly used the boat ramp. Phillips also testified Crystal Pines residents regularly used the boat ramp, but with his permission. In 2004, Phillips installed a locked gate prohibiting access to the boat ramp and later conveyed title to his son. His son then transferred title to the Yacht Club, which has maintained the locked access.

The HOA filed suit against Phillips, CLLD, and the Yacht Club alleging CLLD and Phillips, as CLLD's successor, were responsible for maintaining the roads in Crystal Pines and claiming an easement to use the boat ramp. The master found in favor of the HOA on both claims, and this appeal followed.

## LAW/ANALYSIS

### I. Construction of the 1981 Deed

■ Phillips maintains the master erred in determining the deed placed maintenance responsibilities for all the roads in

Crystal Pines on CLLD.[1] We agree.

 A reviewing court determines, as a matter of law, whether the language in a deed is ambiguous. *Santoro v. Schulthess,* 384 S.C. 250, 272, 681 S.E.2d 897, 908 (Ct.App. 2009). A reviewing court considers questions of law de novo. *Id.* "A contract is ambiguous only when it may fairly and reasonably be understood in more ways than one, i.e., when it is obscure in meaning through indefiniteness of expression, or containing words having a double meaning." 30 S.C. Jur. *Contracts* § 32 Ambiguity (1999) (footnote omitted).

 If the reviewing court determines a deed is ambiguous, it must interpret the deed. "If the action is viewed as interpreting a deed, it is an equitable matter and the appellate court may review the evidence to determine the facts in accordance with the court's view of the preponderance of the evidence." *Slear v. Hanna,* 329 S.C. 407, 410–11, 496 S.E.2d 633, 635 (1998).

> In construing a deed, the intention of the grantor must be ascertained and effectuated, unless that intention contravenes some well settled rule of law or public policy. In determining the grantor's intent, the deed must be construed as a whole and effect given to every part if it can be done consistently with the law.

*K & A Acquisition Group, LLC v. Island Pointe, LLC,* 383 S.C. 563, 581, 682 S.E.2d 252, 262 (2009) (internal quotation marks and citations omitted). "The intention of the grantor must be found within the four corners of the deed. When

---

1. The HOA contends Phillips's argument regarding construction of the deed is unpreserved because it was not raised to and ruled upon by the master. We disagree. At the beginning of trial, when discussing the exhibits to be submitted, counsel for Phillips stated both sides "have the same documents, and we agree our interpretation is correct, or I should say that I agree, that the Homeowners' Association is responsible for the roads and not Mr. Phillips." Witnesses for both sides were asked to look at the deed and determine who bore road maintenance responsibilities under the document. Phillips testified regarding his belief the deed did not place road maintenance obligations on CLLD. The master clearly ruled against Phillips's construction of the deed when it stated in the order that "CLLD contracted with [the Road Company] to maintain the [r]oads according to the terms of the [d]eed." Because this issue was raised to and ruled upon by the master, it is adequately preserved for our review.

intention is not expressed accurately in the deed evidence *aliunde* may be admitted to supply or explain it. The instrument is not thereby varied or contradicted but is explained or corrected." *Id.* (citations omitted).

■ We find the deed is ambiguous with respect to road maintenance obligations. Paragraph 11 of the deed discusses the further development of Crystal Pines by CLLD and how that development relates to roads in the subdivision. The deed indicates CLLD will pay to open unopened portions necessary for development and will maintain or repair "said roads as nearly as may be practicable in the same condition and repair as originally paved." Paragraph 11 then discusses the obligation of CLLD to ensure the roads are kept free of obstruction to allow emergency vehicles access to the neighborhood.

The HOA contends Paragraph 11 unambiguously places the burden for road maintenance in Crystal Pines on CLLD. However, the placement of such an important obligation in a paragraph solely discussing the process of opening new roads casts doubt upon the clarity of this obligation. Additionally, "said roads" is not a defined term and Paragraph 13 of the deed seems to indicate the Road Company is responsible for road repair in the subdivision. It states:

> Notwithstanding anything to the contrary in this instrument contained, if [the Road Company] shall incur any cost or expense for or on account of any item of maintenance, repair or other matter directly or indirectly occasioned or made necessary by any wrongful or negligent act or omission of any owner ... such cost or expense shall not be borne by [the Road Company] but by such owner and if paid out the [Road Company] shall be paid or reimbursed to the [Road Company] by such owner forthwith

This paragraph indicates either the Road Company or a particular resident would be responsible for repairing damage to roads. There is no mention of CLLD. Based on the lack of clarity and the seeming inconsistency in the deed, we conclude the deed is ambiguous, and we must therefore look to the intent of the parties.

■ Viewing the deed as a whole, its purpose was to convey ownership of the roads in Crystal Pines to the Road

Company. Paragraph 10 states the Road Company "shall receive title to Crystal Pines Drive, Knob Cone Road, Red Fox Trail, Whippoor Will Court, and Torrey Pine Lane and shall hold and deal with the same and such other assets as it may receive from time to time...." The Road Company also had the right to dedicate the roadways to a government entity for perpetual maintenance under Paragraph 22. To place ownership and essentially all control of the roads with the Road Company and leave the responsibility for maintenance with CLLD would be inconsistent.

Because the deed is ambiguous, we may also consider extrinsic evidence to ascertain the intent of the parties. The general rule, as evidenced by Lexington County Development Guidelines, was for homeowners to take over maintenance of private roads once the final plat of a development was approved. According to Phillips's testimony at trial, the deed states CLLD would repair and maintain the roads being conveyed if they were damaged during the process of constructing the new portions of road. He testified:

Q. Is it your position that paragraph 11 doesn't obligate the developer to maintain and repair the roads mentioned here?

A. If you read the whole sentence, it says that if you cause damage, you will repair it; if you don't read the whole sentence, you can take portions of it and put together an entirely different notion, and that is what you have done....

Q. I'm going to borrow Mr. Lapine's pen and ask you, on Exhibit #1, paragraph 11, to circle the words that you contend limit the developer's obligation to repair damage it causes.

A. It would be the whole paragraph.

Q. Then circle the whole paragraph. So you can't point to specific words in the paragraph that limit the developer's liability to repairing damages it causes?

A. You would have to assume that a road was opened, an unpaved portion was opened, and that there was damage done.

The fact that the only mention of maintaining the roads immediately follows the clause concerning the opening of new

roads is consistent with Phillips's explanation of CLLD's intent in Paragraph 11.

The HOA argues Phillips's efforts beginning in 1996 to execute a corrected deed with Exhibit B attached evidenced his understanding that CLLD had the obligation to maintain the roads pursuant to the original deed. We disagree. Phillips testified that his purpose in drafting the corrected deed was to ensure the conveyance of the roads to the HOA as an incorporated entity was proper. The inclusion of Exhibit B and Phillips's amendments to the restrictions governing certain sections of Crystal Pines likely reflects his desire to clear up any ambiguity in the original deed. Additionally, the master found that Phillips made some road repairs in the late 1990s. The record contains no testimony regarding this particular point, but the master's order indicates the repairs were made when Phillips "extended the Roads to open new areas of Crystal Pines." That action is consistent with Phillips's construction of the deed. Other than that instance, the testimony indicates Phillips consistently disclaimed personal responsibility for repairing or maintaining the roads in Crystal Pines.

Because we have a broad standard of review in this case and considerable evidence supports Phillips's construction of the deed, we find the CLLD and Phillips are not responsible for repairing or maintaining the roads in Crystal Pines, except to the extent of damage that occurs during further development of the subdivision. Therefore, we reverse the master's finding CLLD is responsible generally responsible for all road maintenance in Crystal Pines. Accordingly, we decline to address two additional issues raised by Phillips regarding the amount of damages awarded to Crystal Pines or whether Phillips was successor to CLLD. *See Whiteside v. Cherokee Cnty. Sch. Dist. No. One*, 311 S.C. 335, 340, 428 S.E.2d 886, 889 (1993) (declining to address remaining issues when determination of prior issue is dispositive).

## II. The Boat Ramp

Phillips argues the master erred in determining the HOA was entitled to an easement for use of the community's boat ramp. We disagree.

 "The determination of the existence of an easement is a question of fact in a law action and subject to an any evidence standard of review when tried by a judge without a jury." *Slear*, 329 S.C. at 410, 496 S.E.2d at 635. To establish a prescriptive easement, a party must demonstrate (1) continued and uninterrupted use or enjoyment of the right for a period of 20 years, (2) proof of the identity of the thing enjoyed, and (3) adverse use or use under a claim of right. *Matthews v. Dennis*, 365 S.C. 245, 249, 616 S.E.2d 437, 439 (Ct.App.2005).

 According to the testimony in the record from Phillips and Bugenske, the ramp was constructed in 1980 and homeowners used it until 2004, when the Yacht Club restricted access.[2] Phillips claims the homeowners used the boat ramp with his permission. However, some evidence demonstrates the use was under a claim of right, not just with permission. According to Bugenske, homeowners were told when they purchased their lots they had access to the boat ramp and they used the ramp frequently throughout the years with no indication they sought Phillips's permission to do so. Marketing brochures for the subdivision indicated deep-water access was available to residents.

Detrimental to HOA's case is that Bugenske's testimony only affects the period of time after he purchased his home in 1994, short of the required twenty years. The only evidence in the record from the 1984 to 1994 period is from Phillips himself. Phillips acknowledged homeowners used the ramp, but he claims they did so with his permission. However, in a letter to the HOA in 2002, Phillips indicates the original 1981 deed transferring ownership of the roads also included the transfer of ownership of the boat ramp. The letter states: "Although not specifically mentioned in the deed, the entrance gates and Parcel A including the boat ramp are included in property turned over with the roads." Furthermore, a plat

2. Phillips argues the Road Company and the HOA are not the same entity for purposes of establishing the twenty-year prescriptive period. However, even if the entities are not the same, a claimant is permitted to tack the time period of a prior owner to his own to establish the required prescriptive period. *See Morrow v. Dyches*, 328 S.C. 522, 527, 492 S.E.2d 420, 423 (Ct.App.1997) ("A party may 'tack' the period of use of prior owners in order to establish the 20–year requirement.").

filed in 1986 indicates the location of the boat ramp is in an area designated "community common area." [3] Phillips's testimony regarding actual use, coupled with the letter and plat, is at least some evidence the residents were using the boat ramp based on a claim of right during the 1984 to 1994 period. Therefore, we find the master did not err in finding a prescriptive easement in favor of the HOA.

Because we affirm the master's finding the HOA established a prescriptive easement to use the boat ramp, we need not address Phillips's remaining argument regarding an easement by implication in favor of Section IV of Crystal Pines. *See Whiteside*, 311 S.C. at 340, 428 S.E.2d at 889 (declining to address remaining issues when determination of prior issue was dispositive).

Based on the foregoing, the judgment of the master is

**AFFIRMED IN PART AND REVERSED IN PART.**

HUFF and LOCKEMY, JJ., concur.

---

**3.** Although the year 1986 cannot be used to establish the beginning of the twenty-year prescriptive period, the plat is some evidence demonstrating residents would have understood their use to be a matter of right. The plat and the contents of the letter also discredit Phillips's testimony that residents only used the boat ramp with his permission.