**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 12-2154**

———————

FIRST SOUTH BANK,

> Plaintiff – Appellee,

> v.

BANK OF THE OZARKS,

> Defendant – Appellant.

———————

**No. 12-2185**

———————

FIRST SOUTH BANK,

> Plaintiff – Appellee,

> v.

BANK OF THE OZARKS,

> Defendant – Appellant.

———————

Appeals from the United States District Court for the District
of South Carolina, at Beaufort.  Richard M. Gergel, District
Judge.  (9:11-cv-02587-RMG)

———————

Argued:  September 17, 2013       Decided:  October 18, 2013

———————

Before KING, SHEDD, and THACKER, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————————

**ARGUED:** John Coffman Lindley, III, JOHNSTON, ALLISON & HORD, PA, Charlotte, North Carolina, for Appellant. Alice F. Paylor, ROSEN, ROSEN & HAGOOD, LLC, Charleston, South Carolina, for Appellee. **ON BRIEF:** Elizabeth J. Palmer, ROSEN, ROSEN & HAGOOD, LLC, Charleston, South Carolina, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Bank of the Ozarks appeals the district court's judgment in favor of First South Bank in this breach of contract action. For the following reasons, we affirm.

## I.

In June 2010, Woodlands Bank agreed to issue a $7.1 million development loan to Lakeside Development, LLC (the Borrower or Lakeside). Seeking another bank to help fund the loan, Woodlands approached First South Bank, and the banks eventually entered into a Participation Agreement (the Agreement), whereby First South Bank agreed to fund up to $4.15 million of the development loan. During negotiations, First South Bank demanded that Woodlands be responsible for all expenses arising from servicing the loan and would not have entered into the Agreement without this promise.

To that end, the Agreement specifically discussed the handling of expenses, providing as follows in Paragraph 4:

> 4. EXPENSES. Seller [Woodlands] may at its discretion make additional advances for taxes, insurance premiums and other items deemed necessary by [Woodlands] to collect, enforce, or protect the Loan and any Property securing the Loan including, but not limited to, attorneys' fees, court costs and disbursements (Expenses). Purchaser's [First South Bank's] percentage of Expenses is:
>
> A. {X} No Shared Expenses. [Woodlands] will bear all expenses.

    B.   {} Shared Expenses. _____ percent of Expenses,
    or if no percentage is indicated, that percentage of
    Expenses which [First South Bank's] unreimbursed
    investment is of the principal amount of the Loan
    outstanding on the date Expenses are incurred.  All
    Expenses will be shared in the proportion indicated on
    the date Expenses are incurred.  [First South Bank]
    will pay to [Woodlands] on demand [First South Bank's]
    share of Expenses.  [Woodlands] will remit to [First
    South Bank's] share of Expenses recovered by
    [Woodlands].

(J.A. 25).  The banks selected option A, indicating by marking

with an X that Woodlands was responsible for all expenses.

In addition to expenses, the Agreement also addressed

"Payments," providing in Paragraph 3 that "[Woodlands] will

receive all Payments and apply them to Borrower's account," and

that "[First South Bank's] percentage of all Payments is . . .

[First South Bank] First Out: 100 percent of Payments before

Default until such time as [First South Bank] has received

[First South Bank's] Investment plus interest thereon."  (J.A.

25).  "Payments" are defined in Paragraph 9 as "principal,

interest, and other charges received by [Woodlands] with respect

to the Loan from whatever source derived."  (J.A. 26).

Finally, Paragraph 19 addressed what would happen in the

event Lakeside defaulted on the underlying development loan:

    19.  DEFAULT AND LIQUIDATION OF LOAN.  Notwithstanding
    any payment terms to the contrary, in the event of
    default, or if [Woodlands] in its sole discretion
    should otherwise accelerate and liquidate the Loan,
    all Payments collected and received by [Woodlands]
    will be applied ratably as follows: first, to
    Expenses; second, to the unpaid principal amount of

4

the Loan in proportion to the respective unpaid investments of [Woodlands] and [First South Bank] in the Loan at the time of Default; and third, to the respective accrued interest and other charges of [Woodlands] and [First South Bank]. Upon Borrower's Default, all Payments and Borrower Fees received from Borrower, whether designated for repayment of the loan or undesignated, will be deemed intended for the repayment of the Loan in accordance with this Agreement.

(J.A. 26). Paragraph 19 does not define "payment terms," "Payments," or "Expenses."

Shortly after signing the Agreement, Woodlands entered receivership under the Federal Deposit Insurance Corporation, and Bank of the Ozarks purchased the loan to Lakeside Development and became Woodlands' successor in interest to the Agreement. Thereafter, Lakeside defaulted on the loan. Bank of the Ozarks began collecting the loan from Lakeside's assets, including liquidating one of Lakeside's trust accounts that had secured the initial loan. Bank of the Ozarks then deducted all of its expenses—$81,452.39—before paying First South Bank its 58.041% share of the remaining assets.

First South Bank responded by suing Bank of the Ozarks in federal district court, alleging breach of contract for deducting expenses before paying First South Bank's share of the recovery. Bank of the Ozarks moved for judgment on the pleadings, attaching the Agreement and arguing that Paragraph 19 permitted it to deduct expenses incurred after a default. First

5

South Bank filed a cross-motion for summary judgment, arguing that Paragraph 4 unambiguously required Bank of the Ozarks to bear all expenses. The district court denied both motions, concluding "as a matter of law that the Participation Agreement is ambiguous with regard to the issue raised in this action." (J.A. 53-54). Thereafter, the court held a bench trial during which both parties presented extrinsic evidence regarding their understanding of the Agreement. At the close of evidence, the court ruled in favor of First South Bank and ordered Bank of the Ozarks to pay $47,275.78. First South Bank v. Bank of the Ozarks, 2012 WL 3597665 (D.S.C. Aug. 12, 2012). The court expounded upon its earlier ruling concerning the ambiguity of the Agreement, explaining that "[w]hile Paragraph 4 plainly and without qualification states that [Bank of the Ozarks] is to bear all Expenses, paragraph 19 appears to permit [Bank of the Ozarks], after default, to pay Expenses out of the proceeds that it receives." Id. at *6. The court found that it could not "reconcile these two provisions" and that the Agreement was thus ambiguous. Id. By separate order, the court later granted attorneys' fees and costs in the amount of $41,668.95.

II.

Bank of the Ozarks now appeals, contending that the court erred in denying its motion for judgment on the pleadings.[*] We review this ruling de novo, Butler v. United States, 702 F.3d 749, 751-52 (4th Cir. 2012). Under South Carolina law, which applies here, an agreement is ambiguous if it is "susceptible to more than one interpretation or its meaning is unclear." Miles v. Miles, 711 S.E.2d 880, 883 (S.C. 2011). "Whether a contract is ambiguous is to be determined from the entire contract and not from isolated portions of the contract." Farr v. Duke Power Co., 218 S.E.2d 431, 433 (S.C. 1975). A contract may be ambiguous because of "indefiniteness of expression," internal inconsistency, or inclusion of "words that have a double meaning." Crystal Pines Homeowners Ass'n v. Phillips, 716 S.E.2d 682, 685 (S.C. Ct. App. 2011) (internal quotation marks omitted).

Bank of the Ozarks argues that the Agreement, specifically Paragraph 19, unambiguously provides that, in event of a

---

[*] Because Bank of the Ozarks is only appealing this pretrial order, we requested that the parties file supplemental briefs addressing whether, under Varghese v. Honeywell Int'l, Inc., 424 F.3d 411, 420-23 (4th Cir. 2005), Bank of the Ozarks was precluded from arguing that the contract was unambiguous. Having reviewed the supplemental briefs and the responses of the parties at oral argument, we are satisfied that, under the particular facts of this case, Bank of the Ozarks preserved its argument.

7

default, expenses are shared. Bank of the Ozarks rests its argument on the first sentence of Paragraph 19, which provides "[n]otwithstanding any payment terms to the contrary, in the event of default" Bank of the Ozarks could apply all "Payments" first to "Expenses." (J.A. 26). In Bank of the Ozarks' view, Paragraph 4, which defines expenses, is a "payment term" swept aside by Paragraph 19. And, because Paragraph 19 permits Bank of the Ozarks to apply recovered sums first to expenses, Bank of the Ozarks contends that it was authorized to deduct its expenses prior to paying First South's share.

In response, First South Bank contends that "payment terms" in Paragraph 19 refer only to Paragraph 3, which addresses "Payments." First South Bank notes that, while Paragraph 4 has no limiting language suggesting that expenses are handled differently in the event of a default, Paragraph 3 specifically mentions that First South Bank is entitled to "100 percent of Payments before default." (J.A. 25). Thus, in First South Bank's view, Paragraph 19 simply reaffirms what is stated in Paragraph 3 regarding what occurs to "payments" after default and has no impact on Paragraph 4 and Bank of the Ozarks' duty to shoulder all expenses.

We agree with the district court that the contract is ambiguous. As First South Bank notes, "payment terms" in Paragraph 19 are not defined by the contract, and they can

8

reasonably be read as limited to Paragraph 3. Under that reading, Paragraph 19 simply reinforces the reference to default in Paragraph 3. "Payment terms" certainly could encompass a broader section of the Agreement, but, critically, the fact that the phrase could be read in such a way confirms its ambiguity. Because "payment terms" could be read in several different manners, Bank of the Ozarks is incorrect that the phrase unambiguously sweeps aside Paragraph 4's rule for expenses. Accordingly, we agree with the district court that the Agreement is internally inconsistent and thus ambiguous.

### III.

For the foregoing reasons, we affirm the district court's denial of Bank of the Ozarks' motion for judgment on the pleadings.

AFFIRMED

9