1385

Elmer R. HENDRIX, a/k/a Jack Hendrix; Brunson W. Hendrix, Jr.; and Elena Hendrix, as trustees under a written inter vivos trust agreement, dated May 16, 1985, by Joel Hendrix, trustor; and Brunson W. Hendrix, Jr. and Elmer R. Hendrix, a/k/a Jack Hendrix, as executors under the will of Joel Hendrix, deceased, dated May 15, 1985, Respondents v. Brunson W. HENDRIX, III; Joel A. Hendrix, Jr.; Rhonda Renee Hendrix; Shawn D. Hendrix (a minor over the age of 14 years); Hela Ratley; Sandra Hendrix Martin Stancells; Elena Hendrix; Jewell Powell; Rita Hendrix; Carolina Amusements, Inc.; Marie H. Tolson; Chesley Tolson; Jesse J. Floyd; Al Shook; Gene Brantley; Harry Baker; Brunson W. Hendrix, Jr.; and Elmer R. Hendrix, a/k/a Jack Hendrix,

Defendants, Of whom Jesse J. Floyd is the Appellant, and Rhonda Renee Hendrix is a Respondent.

Appeal of Jesse J. FLOYD.

(383 S. E. (2d) 468)

Court of Appeals

*James B. Richardson, Jr.,* of *Richardson & Smith,* Columbia, *for appellant.*

*George I. Alley,* of *Ellison, Quinn, Isaacs & Alley, Fredrick A. Gertz,* of *Gertz, Kastanes & Moore,* both of Columbia, and *Henry H. Taylor,* of *Kirkland, Taylor, Wilson, Moore, Allen & Deneen,* West Columbia, *for respondents.*

Heard May 8, 1989.

Decided Aug. 14, 1989.

SHAW, Judge:

The respondents, heirs of the estate of decedent Joel Hendrix, instituted this declaratory judgment action seeking to impose a constructive trust on five pieces of property titled in the name of appellant Jesse J. Floyd. The trial judge held a constructive trust arose in the properties and held Hendrix owned a fifty percent interest in four of the properties and a one hundred percent interest in the fifth piece of property. Floyd appeals. We reverse.

The dispute between these parties arises over property described as follows: (1) 1619 through 1621 Main Street, Columbia; (2) 1649 Main Street, Columbia—Hennessey's Restaurant; (3) Old Anna House, Ice Cream House—Five Points, Columbia; (4) Old Dominion on Two Notch Road— Warehouse and (5) Barbecue Inn, Dee's Recap—Charleston Highway, West Columbia. Legal title to these properties is held in Floyd's name. However, respondents contend these five properties were owned jointly by Hendrix and Floyd. Floyd denies this, claiming Hendrix held no interest in the disputed properties. The issue before us is whether the evidence supports the finding by the trial judge of a constructive trust. We find it does not and therefore reverse.

An action to declare a constructive trust is one in equity and this court has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence. *Lollis v. Lollis*, 291 S. C. 525, 354 S. E. (2d) 559 (1987). In order to establish a constructive trust, the evidence must be clear, definite and unequivocal. *Id.* A constructive trust arises whenever circumstances under which property was acquired make it inequitable that it be retained by the one holding legal title. These circumstances include fraud, bad faith, abuse of confidence, or violation of a fiduciary duty which gives rise to an obligation in equity to make restitution. *Id.*

Respondents put forth testimony of relatives, friends and the accountant of both Hendrix and Floyd. The testimony of these persons was to the effect that they understood the properties in dispute were held jointly by

Hendrix and Floyd. There was much testimony from these witnesses regarding discussions held about the joint ownership of these properties during the last few weeks of Hendrix's life. Some of these conversations occurred in the presence of Floyd whereby Hendrix, while in a hospital on his death bed, asserted an interest in these properties and Floyd failed to deny any such interest. There was also testimony from these witnesses that Floyd had admitted Hendrix held an interest in these properties.

However, the record indisputably reflects that these properties were all held in Floyd's name. He made most, if not all, of the down payments on the properties and reflected gross rent and expenses on these properties on his tax returns. While Floyd admitted being present during the discussions of the property, he stated he remained silent as to the contentions of ownership because he was "not going to argue with a dying man." He further denied telling these witnesses he held the disputed properties jointly with Hendrix.

In explaining Hendrix's connection with the disputed property, Floyd described, in detail, how the acquisition of each piece came about. Basically, Floyd asserted he would purchase the properties and Hendrix would occupy or manage the properties. Under their agreement, Hendrix would collect the rent monies, make the mortgage payments, keep up the insurance and taxes and receive any money left over for his efforts. He stated he considered this arrangement to be a good opportunity to purchase real estate and be assured the payments would be made. His long range goal was to own the property free and clear.

While Mr. Hendrix may have felt he deserved a one-half interest in the properties for his management, there is no documentary evidence that such an agreement existed between the parties. Indeed, the only evidence of any agreement between Hendrix and Floyd as relates to these properties is that as espoused by Floyd.

In summary, the respondents have failed to produce any evidence that an agreement existed between Hendrix and Floyd giving Hendrix an interest in the disputed property. Neither did they produce any documentary evidence of Hendrix's ownership. Hendrix may very well have purported

to hold an interest in the properties, but this, along with the disputed evidence put forth by respondents, does not amount to the clear and convincing evidence necessary to impose a constructive trust.

The order below is therefore reversed.

SANDERS, C. J., and BELL, J., concur.