705 S.E.2d 481

**Carolyn R. CHURCH, Appellant/Respondent,**

v.

**Carroll E. McGEE, Personal Representative of the Estate of William LuRue McGee; and Ted O. McGee, Jr., as Trustee of the Pearly Miles McGee and Ted O. McGee, Sr. Living Trusts; and Carroll E. McGee, Individually, Respondents/Appellants.**

No. 4782.

Court of Appeals of South Carolina.

Heard Oct. 6, 2010.

Decided Jan. 26, 2011.

Rehearing Denied Feb. 28, 2011.

336

338

Matthew E. Steinmetz and Charles M. Black, Jr., both of Columbia, for Appellant–Respondent.

S. Jahue Moore, of West Columbia, for Respondents–Appellants.

GEATHERS, J.

Carolyn R. Church brought this quantum meruit action against Carroll E. McGee (Carroll), individually and as personal representative of the Estate of William LuRue McGee (Decedent),[1] as well as Ted O. McGee, Jr. (Ted), as trustee of the McGee family trust (collectively Respondents),[2] seeking

---

1. We order that the case caption be amended to reflect the correct spelling of Decedent's middle name, which is "LuRue" rather than "LaRue."

2. The official name of the trust is reflected in the case caption. For the sake of brevity, we will refer to the trust as "the McGee family trust."

compensation for caregiving services provided to Decedent in his final years. In these cross-appeals, Church challenges the circuit court's finding that she expected no compensation when she provided the caregiving services. She also challenges the circuit court's refusal to remove Carroll as personal representative of Decedent's estate. Carroll challenges the circuit court's failure to allow a setoff of $35,000 against Decedent's $100,000 bequest to Church. Carroll also challenges the circuit court's award of prejudgment interest on the amount the court determined the estate owed Church. We reverse the award of prejudgment interest and affirm the remainder of the circuit court's order.

## FACTS/PROCEDURAL HISTORY

Decedent was a paraplegic from 1957, when he was sixteen years of age, until his death in 2003. In 1993, Decedent and Church began seeing each other socially, and they developed a bond. Subsequently, Church moved in with Decedent and his mother. In 1996, Church had to abandon her housecleaning occupation to provide full-time care to Decedent, whose health had significantly deteriorated.

After Decedent's death, Church removed several items of personal property from Decedent's primary residence and from the lake house belonging to Decedent's family.[3] Church considered some of these items to be gifts to her from Decedent and other items to be property purchased with their joint funds. Decedent's last will provided for Church to receive $100,000 and a Lexus automobile and for his siblings to receive the remainder of his estate. However, Carroll advised Church that Decedent's estate was insolvent.

Church filed a claim against Decedent's estate for $450,000 for caregiving services she allegedly rendered to Decedent, and the probate court granted her petition to remove the proceeding to circuit court. In September 2004, she filed separate petitions to remove Carroll as the personal representative of Decedent's estate and to appoint a special administrator to handle the estate under the continuing authority of the

---

3. Decedent's mother had died a few years before Decedent died.

court.[4] The probate court granted Carroll's petition to remove these matters to circuit court.

Church then filed a complaint in circuit court asserting the following causes of action: Enforcement of Specific Bequest, Quantum Meruit, Fraud, Intentional Infliction of Emotional Distress, Unfair Trade Practices, and Constructive Trust. The circuit court conducted a non-jury trial and dismissed the causes of action for fraud, intentional infliction of emotional distress, and unfair trade practices. The court later issued a written order denying Church's request to remove Carroll as personal representative and concluding that Church was not entitled to compensation for her alleged caregiving services. The order also allowed a setoff of $6,000 against the $100,000 bequest to Church to compensate the estate for funds Decedent had invested in a mobile home sold by Church after Decedent's death. The circuit court denied Carroll's request for a $35,000 setoff to compensate the estate for personal property taken by Church and ordered Carroll to immediately pay to Church $94,000 plus prejudgment interest running from the date of Decedent's death. These cross-appeals followed.

## ISSUES ON APPEAL

1. Did the circuit court err in tailing to remove Carroll as personal representative of Decedent's estate when Carroll allegedly misrepresented the value of estate assets and engaged in self-dealing?

2. Did the circuit court err in concluding that Church was not entitled to relief under the theory of constructive trust when Carroll and Ted allegedly engaged in self-dealing concerning an asset that should have been included in the estate?

3. Did the circuit court err in concluding that Church was not entitled to relief in quantum meruit when she conferred a benefit on the estate?

---

4. The specific provisions governing administration of an estate under the continuing authority of the court are in S.C.Code Ann. §§ 62–3–501 to –505 (2009).

4. Did the circuit court violate Rule 52(a), SCRCP, by failing to make separate findings of fact as to each issue?

5. Did the circuit court err in failing to allow a $35,000 setoff against the $100,000 bequest to Church to compensate the estate for personal property she kept?

6. Did the circuit court err in awarding prejudgment interest to Church?

## STANDARD OF REVIEW

The standard of review applicable to cases originating in the probate court and removed to circuit court is controlled by whether the underlying cause of action is at law or in equity. *Blackmon v. Weaver*, 366 S.C. 245, 248–49, 621 S.E.2d 42, 43–44 (Ct.App.2005). "When legal and equitable causes of action are maintained in one suit, the court is presented with a divided scope of review." *Id.* "On appeal from an action at law that was tried without a jury, the appellate court can correct errors of law, but the findings of fact will not be disturbed unless found to be without evidence which reasonably supports the judge's findings." *Id.* "In an equitable action tried without a jury, the appellate court can correct errors of law and may find facts in accordance with its own view of the preponderance of the evidence." *Id.*

In the present case, the causes of action for removal of a personal representative, constructive trust, quantum meruit, and setoff are equitable causes of action. *See Gignilliat v. Gignilliat, Savitz & Bettis, L.L.P.*, 385 S.C. 452, 466, 684 S.E.2d 756, 764 (2009) (stating that quantum meruit, quasi-contract, and implied by law contract are equivalent terms for an equitable remedy); *Lollis v. Lollis*, 291 S.C. 525, 530, 354 S.E.2d 559, 561 (1987) (holding that an action to declare a constructive trust is in equity); *W. M. Kirkland, Inc. v. Providence Washington Ins. Co.*, 264 S.C. 573, 580, 216 S.E.2d 518, 521 (1975) (stating that a setoff belongs to the inherent power of a court in the exercise of its equitable jurisdiction); *Blackmon*, 366 S.C. at 248, 621 S.E.2d at 43 (holding that an action to remove a personal representative is equitable in nature).

■ Our equitable standard of review does not require this court to ignore the findings of the trial judge who heard the witnesses. *Thomas v. Mitchell,* 287 S.C. 35, 38, 336 S.E.2d 154, 155 (Ct.App.1985). Decisions relative to the veracity and credibility of witnesses can best be made by the trial judge who heard the witnesses and observed their demeanor. *Id.*

## LAW/ANALYSIS

### I. Church's Appeal

#### A. *Removal of Personal Representative*

■ Church assigns error to the circuit court's failure to remove Carroll as personal representative of Decedent's estate. She asserts that Carroll willfully misrepresented the value of estate assets and engaged in self-dealing. In particular, she argues that after Carroll and Ted purchased Decedent's interests in some of their real estate partnerships, they sold the partnership assets for much more than the value they had assigned to them for purposes of purchasing Decedent's interests. We find no malfeasance.

Section 62–3–611 of the South Carolina Code (2009) provides for the removal of an estate's personal representative for cause:

(a) A person interested in the estate may petition for removal of a personal representative for cause at any time....

(b) Cause for removal exists when removal would be in the best interests of the estate, or if it is shown that a personal representative or the person seeking his appointment *intentionally misrepresented material facts* in the proceedings leading to his appointment, or that the personal representative has disregarded an order of the court, has become incapable of discharging the duties of his office, or *has mismanaged the estate* or failed to perform any duty pertaining to the office....

(emphases added).

■ "[T]here is a strong deference shown to the personal representative chosen by the testator." *Blackmon,* 366 S.C. at 251, 621 S.E.2d at 45. "The [c]ourts have ever been reluctant to take the management of an estate from those to

whom it has been confided by the testator, for to that extent the intention expressed in his will would be defeated.'" *Id.* (quoting *Smith v. Heyward,* 115 S.C. 145, 164, 105 S.E. 275, 282 (1920)). "The power to remove a personal representative 'should be [exercised] with great caution, and not at all, unless it is made to appear to be necessary for the protection of the estate, to prevent loss or injury to it from misappropriation, maladministration or fraud.'" *Id.* (quoting *Smith,* 115 S.C. at 164–65, 105 S.E. at 282).

We find no credible evidence of malfeasance on the part of Carroll. Additionally, Respondents' certified public accountant testified that it is a normal practice to pay capital account value for a decedent's small interest in a real estate partnership, as Carroll and Ted did when they paid for Decedent's 7.14 percent interest in one of their partnerships. Respondents also presented testimony showing that some of the assets of the partnerships in which Decedent had an interest increased in value after Decedent's death.

Based on the foregoing, we affirm the circuit court's rejection of Church's request to remove Carroll as personal representative.

B. *Constructive Trust*

Church argues that funds generated from Carroll's and Ted's alleged improper self-dealing should be considered held in a constructive trust from which Church should be compensated for her contributions to the McGee family's sixplex apartments. We disagree.

A constructive trust results "[whenever] circumstances under which property was acquired make it inequitable that it be retained by the one holding legal title. These circumstances include fraud, bad faith, abuse of confidence, or violation of a fiduciary duty which gives rise to an obligation in equity to make restitution."

*Macaulay v. Wachovia Bank of S.C., N.A.,* 351 S.C. 287, 294, 569 S.E.2d 371, 375 (Ct.App.2002) (quoting *Hendrix v. Hendrix,* 299 S.C. 233, 235, 383 S.E.2d 468, 469 (Ct.App.1989)).

For the reasons stated in the discussion of Church's request to remove Carroll as personal representative, we believe the preponderance of the evidence supports the circuit court's

finding that there was no malfeasance on Carroll's part. Therefore, we affirm the circuit court's rejection of Church's constructive trust claim.

## C. *Quantum Meruit*

██ Church contends that the circuit court erroneously denied her quantum meruit claim. She maintains that the evidence shows she expected to be compensated when she rendered caregiving services to Decedent. We disagree.

In *Myrtle Beach Hospital, Inc. v. City of Myrtle Beach,* our supreme court adopted the following standard for a claim of compensation in quantum meruit: (1) a benefit conferred by the plaintiff upon the defendant; (2) the realization of that benefit by the defendant; and (3) retention of the benefit by the defendant under circumstances that make it inequitable for him to retain it without paying its value. 341 S.C. 1, 8–9, 532 S.E.2d 868, 872 (2000). In *Sauner v. Public Service Authority of South Carolina,* the supreme court specified that the benefit conferred must be nongratuitous. 354 S.C. 397, 409, 581 S.E.2d 161, 167–68 (2003). The "nongratuitous" requirement may also be found in prior case law discussing compensation for caregiving services. *See In re Limehouse's Estate,* 198 S.C. 15, 21, 16 S.E.2d 1, 4 (1941) (holding that services rendered gratuitously cannot afterwards be converted into a charge).

Here, Church disputes the circuit court's finding that her love for Decedent was the only reason she performed services for him. However, her own testimony supports this finding. Because the testimony shows that Church's services were gratuitous, her quantum meruit claim must fail.

## D. *Rule 52(a), SCRCP*

Church argues that the circuit court committed reversible error in failing to make specific findings of fact in violation of Rule 52(a), SCRCP We disagree.

██ "In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon[.]" Rule 52(a), SCRCP. However, "[t]he rule is directorial in nature[,] so 'where a trial court substantially complies with Rule 52(a)

and adequately states the basis for the result it reaches, the appellate court should not vacate the trial court's judgment for lack of an explicit or specific factual finding.' " *In re Treatment and Care of Luckabaugh,* 351 S.C. 122, 131, 568 S.E.2d 338, 342 (2002) (quoting *Noisette v. Ismail,* 304 S.C. 56, 58, 403 S.E.2d 122, 123–24 (1991)). "We do not require a lower court to set out findings on all the myriad factual questions arising in a particular case." *Luckabaugh,* 351 S.C. at 133, 568 S.E.2d at 343. "But the findings must be sufficient to allow this Court, sitting in its appellate capacity, to ensure the law is faithfully executed below." *Id.*

 Church lists seven items that she contends are factual issues on which the circuit court erroneously failed to make findings of fact. The only one of these items that is not addressed in the circuit court's order is the following: "The refusal to grant an adverse inference and to question the credibility of Ted O. McGee, Jr. who avoided testifying at the final hearing by leaving and not being subject to subpoena. . . ." We do not believe that the circuit court was required to make an explicit finding of fact concerning its assessment of Ted's credibility. *See Luckabaugh,* 351 S.C. at 131, 568 S.E.2d at 342 (holding that when a trial court adequately states the basis for the result it reaches, the appellate court should not vacate the trial court's judgment for lack of an explicit factual finding).

Based on the foregoing, we do not believe the circuit court violated Rule 52(a), SCRCP.

## II. Respondents' Appeal

### A. *Setoff*

 Respondents argue that the circuit court erred in failing to award them a setoff in an amount to compensate for the personal property Church kept. We disagree. Church testified that the items she took were either gifts from Decedent or purchased with their jointly owned funds. We defer to the circuit court's assessment of Church's credibility on this issue. *See Thomas,* 287 S.C. at 38, 336 S.E.2d at 155 (holding that decisions relative to the veracity and credibility of witnesses can best be made by the trial judge who heard the

witnesses and observed their demeanor). Therefore, the circuit court's denial of a setoff for $35,000 is affirmed.

B. *Prejudgment Interest*

Respondents assert that the circuit court erred in awarding prejudgment interest because the standard for awarding prejudgment interest was not met in this case. They also argue that Church's "claim" for the $100,000 bequest did not arise on the date of Decedent's death as the circuit court concluded. We agree.

As an initial matter, Church contends that Respondents did not preserve for appellate review their grounds for assigning error to the award of prejudgment interest. Respondents assert that counsel's objection to the introduction of evidence concerning prejudgment interest sufficiently preserved for review the arguments presented on appeal and that the circuit court in essence ruled on these arguments. We agree.

Post-trial motions are not necessary to preserve issues that have already been ruled on; they are used to preserve those that have been raised to the trial court but not yet ruled on by it. *Wilder Corp. v. Wilke,* 330 S.C. 71, 77, 497 S.E.2d 731, 734 (1998). Here, the circuit court's ruling that Church was entitled to prejudgment interest implied by necessity that she met the standard for an award of prejudgment interest. Further, the circuit court's ruling that the interest would start running as of the date of Decedent's death implied that Church's claim arose on that date. Therefore, the grounds presented on appeal are preserved for review. *Cf. Spence v. Wingate,* 381 S.C. 487, 489–90, 674 S.E.2d 169, 170 (2009) (holding that the issue of a duty based on the existence of a prior attorney-client relationship was preserved for review because the trial court's order addressed the plaintiff's argument by ruling that the defendants "owed no duty or obligation" to the plaintiff and therefore the plaintiff was not required to file a Rule 59(e) motion to preserve the issue).

Moving on to the merits of the issue, prejudgment interest may be awarded pursuant to section 34–31–20(A) of the South Carolina Code (Supp.2009) in the following cases:

In all cases of accounts stated and in all cases wherein any sum or sums of money shall be ascertained and, being due, shall draw interest according to law, the legal interest shall be at the rate of eight and three-fourths percent per annum.

Our supreme court has interpreted section 34–31–20(A) as follows:

The law permits the award of prejudgment interest when a monetary obligation is a sum certain, or is capable of being reduced to certainty, accruing from the time payment may be demanded either by the agreement of the parties or the operation of law. Generally, prejudgment interest may not be recovered on an unliquidated claim in the absence of agreement or statute. The fact that the amount due is disputed does not render the claim unliquidated for purposes of awarding prejudgment interest. Rather, *the proper test is whether or not the measure of recovery, not necessarily the amount of damages, is fixed by conditions existing at the time the claim arose.*

*Austin v. Stokes–Craven Holding Corp.*, 387 S.C. 22, 58, 691 S.E.2d 135, 154 (2010) (citations and internal quotation marks omitted) (emphasis added).

 The question in the present case is whether the measure of recovery for the $100,000 bequest was fixed by conditions existing at the time the claim arose. To answer this question, this court must first determine when the claim arose,[5] and then decide if the measure of recovery was fixed by conditions existing at that time. Church maintains that the measure of recovery was fixed in time at Decedent's death and that Respondents have not provided proof showing otherwise. We disagree.

The point in time that a claim for the object of a bequest arises necessarily depends on when the legatee has a legal right to it. *See* Black's Law Dictionary 281 (9th ed.2009) (defining "claim" as the aggregate of operative facts giving

---

5. The use of the term "claim" should not be confused with the claim that a creditor makes against the estate under the Probate Code. *See* S.C.Code Ann. §§ 62–3–801 to –816 (2009) (addressing creditors' claims against an estate). In the above discussion, the use of the term "claim" merely refers to Church's legal right to take possession or title to the property bequeathed to her in Decedent's will.

rise to a right enforceable by a court). Under the South Carolina Probate Code, a legatee has a legal right to the object of the bequest only when and if the estate has sufficient assets after all debts and expenses of administration have been paid. Section 62–3–101 of the South Carolina Code (2009) provides in pertinent part:

Upon the death of a person, his real property devolves to the persons to whom it is devised by his last will ... or in the absence of testamentary disposition, to his heirs ... *subject to the purpose of satisfying claims as to exempt property rights and the rights of creditors, and the purposes of administration* ... and *his personal property devolves, first, to his personal representative, for the purpose of satisfying claims as to exempt property rights and the rights of creditors, and the purposes of administration* .... and, at the expiration of *three years* after the decedent's death, if not yet distributed by the personal representative, his personal property devolves to those persons to whom it is devised by will or who are his heirs in intestacy, or their substitutes, as the case may be, *just as with respect to real property.*

(emphases added); *see also* S.C.Code Ann. § 62–3–711 (2009) (allowing a personal representative to apply personal property in the estate to the benefit of creditors); S.C.Code Ann. § 62–3–805 (2009) (setting forth payment priorities in the event that the estate's assets are insufficient to pay all creditors' claims in full). It is evident from a reading of section 62–3–101 that generally, a personal representative has up to three years after the decedent's death to distribute personal property to legatees.

Here, Decedent died on January 12, 2003. Pursuant to section 62–3–101, the $100,000, if left in the estate, could have devolved to Church, at the latest, on or about January 12, 2006, three years after Decedent's death. However, in the interim, Church initiated this litigation, and, therefore, administration of Decedent's estate is ongoing. Section 62–3–101 provides that the devolution of a decedent's property to a legatee is subject to a personal representative's power to shift title to himself where required in administration and to protect the rights of creditors or others. Whether justified or not, this very litigation has delayed the closing of the estate

and has created additional expenses for the estate's administration.

Based on the foregoing, Church's "claim" for the $100,000 bequeathed to her has not yet arisen because its payment takes a back seat to the rights of creditors, taxing authorities, and expenses of administration, which have not yet been finally determined. Because the claim is not yet "due," it does not fall within the terms of section 34–31–20(A) authorizing prejudgment interest. Therefore, the circuit court's award of prejudgment interest was inappropriate and should be reversed.

## CONCLUSION

Accordingly, we **REVERSE** the award of prejudgment interest, **AFFIRM** the circuit court on the remaining assignments of error, and **REMAND** for further proceedings consistent with this opinion.

FEW, C.J., and HUFF, J., concur.