736 S.E.2d 286

**MILLVALE PLANTATION, LLC, Respondent,**

v.

**CARRISON FAMILY LIMITED PARTNERSHIP
and Mary H. Carrison, Appellants.**

Appellate Case No. 2011–190727.

No. 5045.

Court of Appeals of South Carolina.

Heard Sept. 11, 2012.
Decided Oct. 31, 2012.

Robert J. Sheheen, of Savage Royall & Sheheen, of Camden, for Appellants.

W. Duvall Spruill, of Turner Padget Graham & Laney, PA, of Columbia, for Respondent.

LOCKEMY, J.

The Carrison Family Limited Partnership (the Carrison Partnership) and Mary H. Carrison (collectively Appellants) appeal the circuit court's award of a 50.72–acre tract of land to

Millvale Plantation, LLC (Respondent), arguing the circuit court erred in (1) construing the deed at issue; (2) finding Appellants failed to prove their trespass to try title claim; and (3) finding Appellants failed to prove their adverse possession claim. We affirm the circuit court.

## FACTS/PROCEDURAL BACKGROUND

In 1992, James L. Haynsworth Sr. (Brother) and Mary H. Carrison (Sister) acquired title to approximately six hundred acres of land (the property) in Sumter County. The property was leased by a hunting club, and Brother and Sister split the lease fees. In 1994, Brother and Sister agreed to divide the property between them, and each party executed and delivered a deed (1994 deeds) to the other party conveying their undivided one-half interest in the property.

The deed from Sister to Brother conveyed the tract of land "shown as that portion of Tract B lying to the north of SC Highway 43–109 ..., containing a total of 291 acres, more or less...." The 291 acres conveyed to Brother were comprised of four parcels, described in the deed as:

| 67 acres | Map 88, Lot 10 | XE5–E–5 |
| 133.9 acres | Map 88, Lot 12 | XE5–E–20 |
| 15.1 acres | Map 88, Lot 15 | Part of XE5–E–20 |
| 75 acres | Map 88, Lot 11 | XE5–E–1 |

The deed from Brother to Sister conveyed the tract of land "shown as being all of Tract A and that portion of Tract B lying to the south of SC Highway 43–109 containing a total of 309.7 acres, more or less...." The 309.7 acres conveyed to Sister were comprised of four parcels, described in the deed as:

| 51 acres | Map 79, Lot 5 | XE5–B–6A |
| 144 acres | Map 79, Lot 6 | XE5–B–6 |
| 92 acres | Map 89, Lot 13 | XE5–F–6 |
| 22.7 acres | Map 89, Lot 12 | XF4–C–1 |

Following the 1994 division, Brother and Sister continued to lease the property as a whole to the hunting club. In October 1995, Sister delivered a quit-claim deed to Brother deeding back fifty-one acres lying north of Highway 43–109, which had been mistakenly transferred to Sister as part of the 144–acre parcel described in the 1994 deed from Brother to Sister. The quit-claim deed stated Sister's net acreage was reduced from 309.7 acres to 258.7 acres.

In 1998, Brother conveyed the majority of his portion of the property to a family trust. In 2008, following Brother's death, the sole surviving trustee conveyed the trust property to Millvale Plantation, LLC (Respondent). In 1998, Sister transferred the property she received in the 1994 division to the Carrison Partnership.

In 2009, Respondent brought an action to quiet title to a disputed 50.72–acre tract (disputed tract) of the property lying south of Highway 43–109. Respondent claimed ownership of the disputed tract, arguing it was part of the 133.9–acre parcel referenced in the deed from Sister to Brother. Appellants asserted counterclaims for trespass to try title and adverse possession. A non-jury trial was held in the circuit court in 2010.

Attorney Frank Robinson, who represented Respondent in connection with the 2008 conveyance of Brother's property, testified he believed the disputed tract had been properly deeded to Brother in 1994. Robinson testified he discovered a discrepancy in the language of the 1994 deed from Sister to Brother during his title examination. Although the 1994 deed stated Sister was conveying the tract of land which was part "of Tract B lying to the *north* of Highway 43–109," the disputed 50.72–acre tract was a portion of the 133.9–acre tract conveyed to Brother and was actually located *south* of SC Highway 43–109. According to Robinson, the fact that the disputed tract was south of Highway 43–109 and yet was included in the specific property description in the deed led him to request a new survey and property boundary plat. The new plat, as well as the tax maps, reflected that the disputed tract was part of the 133.9–acre tract, which was located on both sides of Highway 43–109.[1] Robinson also testified the 1995 quit-claim deed evidenced Sister's intent to convey the disputed tract to Brother in 1994. In the quit-claim deed, Sister stated she should have only received 258.7 acres in the 1994 conveyance and not 309.7 acres. Robinson testified the only way Sister could have 258.7 acres was if she did not own the 50.72–acre disputed tract. Thus, according to Robinson, the quit-claim deed affirmed his conclusion that Sister intended to convey the disputed tract to Brother.

---

1. Appellants do not dispute this finding.

James Carr, an employee of the Sumter County Tax Assessor's office, testified the Tax Assessor's office had assessed taxes from 1994 to 2008 to Brother as the owner of the disputed tract. Carr explained he noticed the reference to Highway 43–109 in the 1994 deed and took it into consideration, but ultimately his decision to assess taxes to Brother for the disputed tract was based on the specific property descriptions in the 1994 deed referencing the tax maps. According to Robinson, Brother paid the taxes on the disputed property. Additionally, Sister testified she intended to transfer *all* of her property to the Carrison Partnership in 1998.

However, Carr explained the disputed tract was not included in the 1998 deed conveying Sister's property.

James LaFrage, Jr., a forester who managed the property prior to and following the 1994 division, testified timber was cut from Brother's and Sister's tracts in 1999 and from 2004 to 2005. According to LaFrage, it was possible loggers were cutting timber on the north and south sides of Highway 43–109 at the same time. LaFrage testified Brother and Sister would have each received checks from the same timber company, and he believed Brother would have known Sister was getting paid for cutting on the disputed tract based on the settlement sheets attached to the timber company checks. The timber deeds in evidence failed to identify ownership of the disputed tract. Additionally, LaFrage testified he had never seen the 1994 deeds, the 1995 quit-claim deed, or the tax maps.

Sister testified she owned the disputed tract. She acknowledged she and Brother never had any disagreement about the ownership or use of the disputed tract. Furthermore, Sister testified she never told Brother not to come onto the disputed tract. According to Sister, she was not aware Brother was paying taxes on the disputed tract, and she believed she was receiving the tax bill as part of several others that arrived yearly.

Following trial, the circuit court issued an order in February 2011 finding the 1994 deeds were not ambiguous and determining Sister intended to convey the disputed tract to Brother. Additionally, the circuit court found Appellants' counterclaims for trespass to try title and adverse possession

failed for lack of evidentiary support. Subsequently, the circuit court denied Appellants' motion to reconsider. This appeal followed.

## STANDARD OF REVIEW

An action to quiet title to property is an action in equity. *Jones v. Leagan*, 384 S.C. 1, 10, 681 S.E.2d 6, 11 (Ct.App.2009). "In an equitable action tried without a jury, the appellate court can correct errors of law and may find facts in accordance with its own view of the preponderance of the evidence." *Church v. McGee*, 391 S.C. 334, 342, 705 S.E.2d 481, 485 (Ct.App.2011). "Our equitable standard of review does not require this court to ignore the findings of the trial judge who heard the witnesses." *Id.* at 343, 705 S.E.2d at 485. "Decisions relative to the veracity and credibility of witnesses can best be made by the trial judge who heard the witnesses and observed their demeanor." *Id.* at 343, 705 S.E.2d at 485–86.

Here, Appellants have asserted counterclaims of trespass to try title and adverse possession. Adverse possession and trespass to try title claims are actions at law. *See Frazier v. Smallseed*, 384 S.C. 56, 61, 682 S.E.2d 8, 11 (Ct.App.2009) (holding an adverse possession claim is an action at law); *Knox v. Bogan*, 322 S.C. 64, 66, 472 S.E.2d 43, 45 (Ct.App.1996) (holding an action in trespass to try title is an action at law). In actions at law tried by a judge without a jury, the findings of fact of the judge will not be disturbed on appeal unless found to be without evidence which reasonably supports them. *Townes Assocs. Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E.2d 773 (1976).

## LAW/ANALYSIS

### I. 1994 Deed

Appellants argue the circuit court erred in finding the 1994 deed from Sister to Brother conveyed the disputed tract to Brother. We disagree.

"In construing a deed, the intention of the grantor must be ascertained and effectuated, unless that intention contravenes some well settled rule of law or public policy." *K & A Acquisition Grp., LLC v. Island Pointe, LLC*, 383 S.C.

563, 682 S.E.2d 252, 262 (2009) (internal quotation marks omitted). "In determining the grantor's intent, the deed must be construed as a whole and effect given to every part if it can be done consistently with the law." *Id.* "The intention of the grantor must be found within the four corners of the deed." *Id.*

Appellants argue that because a plat of the disputed tract was not in existence at the time of the conveyance, the circuit court, in construing the 1994 deed, should have determined title to the disputed tract by referring to Highway 43–109. Appellants maintain Highway 43–109 was the "ultimate dividing line" in the division of the property, and Sister was to receive all of the property south of the highway and Brother was to receive all of the property north of the highway. Appellants argue the tax map references in the 1994 deed should not prevail over the description of Highway 43–109 as the dividing line because the tax map references are merely references to tax map numbers and do not contain boundary descriptions.

Respondent argues the tax map references were the primary method of expressing the intent of the parties, and should prevail over the general description referencing Highway 43–109. Respondent maintains the recitations of acreage in the 1994 deed, as well as the 1995 quit-claim deed, were specific and clearly expressed Sister's intent.

Construing the 1994 deed as a whole, we find Sister intended to convey the disputed tract to Brother. While the general description in the deed states Brother was to receive the property lying north of Highway 43–109, the more specific property description in the deed provides Brother was to receive four tracts totaling 291 acres. One of these tracts, identified by tax map reference as a 133.9–acre tract, included the disputed tract lying south of Highway 43–109. We find the precise recitation of acreage and reference to the tax maps in the 1994 deed is controlling and accurately reflects Sister's intent to convey the disputed tract to Brother. *See Lake View Acres Dev. Co. v. Tindal,* 306 S.C. 477, 480, 412 S.E.2d 457, 459 (Ct.App.1991) (holding that if a general description of the property to be conveyed in the deed is followed by a clause summing up the intention of the parties as to the property

conveyed, "such clause has a controlling effect on all prior phrases used in the description."). Although Sister maintains the tax map references should not prevail, we find the parties' decision to include tax map references in their deeds is significant and reflects their intent to convey the specific acreages described therein.

Furthermore, the 1995 quit-claim deed reflects Sister's intent to convey the disputed tract to Brother. In the quit-claim deed, Sister conveyed fifty-one acres north of Highway 43–109 back to Brother after it had been mistakenly conveyed to her in the 1994 deed from Brother to Sister. The quit-claim deed stated Sister's net acreage was reduced from 309.7 acres to 258.7 acres. If Sister owned the disputed tract, her total acreage would include the 50.72 acre tract, and thus, it would be greater than 258.7 acres. However, the quit-claim deed reiterated that Sister owned only the 258.7 acres she was originally conveyed in the 1994 deed from Brother to Sister.

Accordingly, the preponderance of the evidence in the record supports a finding that Sister conveyed the disputed tract to Brother in the 1994 deed.

## II. Trespass to Try Title and Adverse Possession

Appellants argue the circuit court erred in finding they failed to prove their trespass to try title and adverse possession claims. We disagree.

In a trespass to try title action, the defendant in actual possession of the disputed property is regarded as the rightful owner of the property until the plaintiff proves perfect title, and a mere prima facie showing of paper title by the plaintiff is not enough. *Cummings v. Varn*, 307 S.C. 37, 41, 413 S.E.2d 829, 831–32 (1992). "There are four ways in which a plaintiff in an action of trespass to try title may acquire title to land sufficient to oust a defendant claiming the same land." *Id.* at 40, 413 S.E.2d at 831. "First, the plaintiff may show a grant from the state to someone, and then by successive deeds to him." *Id.* "Second, the plaintiff may trace his title to a common source from whom both he and the defendant claim through separate chains of title." *Id.* at 40–41, 413 S.E.2d at 831. "Third, a plaintiff may show that he and those under whom he claims have been in actual, hostile, exclusive, and

continuous possession of the land adversely to the defendant for twenty years." *Id.* at 41, 413 S.E.2d at 831. "Once that fact is established, the law presumes whatever is necessary to give the plaintiff good title." *Id.* "Fourth, the plaintiff can show he alone or with those from whom he has inherited have been in actual, hostile, exclusive, and continuous possession of the land adversely to the defendant for ten years." *Id.; see also* S.C.Code Ann. §§ 15–67–210 to –270 (2005).

"In order to establish a claim of adverse possession, the claimant must prove by clear and convincing evidence his possession of the subject property was continuous, hostile, actual, open, notorious, and exclusive for the statutory period." *McDaniel v. Kendrick,* 386 S.C. 437, 442, 688 S.E.2d 852, 855 (Ct.App.2009).

Here, Appellants contend Sister has been in actual, hostile, exclusive, and continuous possession of the disputed tract for ten years. Appellants maintain Respondent failed to offer any evidence that Brother, or his successor trustee, exercised any dominion or control over the disputed tract. Respondent argues no evidence was presented Sister went onto the disputed tract after the 1994 division. Additionally, Respondent contends no evidence was presented Sister ever excluded Brother from the disputed tract or paid taxes on the disputed tract.

We find the evidence in the record supports the circuit court's finding that Appellants failed to prove their trespass to try title and adverse possession claims. First, we note that although Sister contends Brother failed to offer any evidence he exercised dominion and control over the disputed tract, Sister bears the burden of proving she has met the requirements for trespass to try title and adverse possession. *See Watson v. Suggs,* 313 S.C. 291, 294, 437 S.E.2d 172, 173 (Ct.App.1993) (holding that "[i]n an action of trespass to try title, the defendant in actual possession of the disputed property is regarded as the rightful owner of the property until the plaintiff proves perfect title"); *Getsinger v. Midlands Orthopaedic Profit Sharing Plan,* 327 S.C. 424, 428, 489 S.E.2d 223, 225 (Ct.App.1997) (holding the burden of proof of adverse possession is on the party relying thereon).

■ "If a claimant asserts title by adverse possession and his or her occupancy is not under color of title, the claimant must show either fencing or other improvements covering most of the subject land or some other continuous use and exercise of dominion." *Frazier v. Smallseed,* 384 S.C. 56, 63, 682 S.E.2d 8, 12 (Ct.App.2009). "While the legal owner need not have actual knowledge the claimant is claiming property adversely, the hostile possession should be so notorious that the legal owner by ordinary diligence should have known of it." *Jones v. Leagan,* 384 S.C. 1, 13–14, 681 S.E.2d 6, 13 (Ct.App.2009).

■ Here, the evidence in the record does not support a finding that Sister ever exercised dominion and control over the disputed tract. No evidence was presented Sister went onto the disputed tract or told Brother not to come onto the disputed tract. Furthermore, no evidence was presented Sister performed any act resulting in physical changes to the disputed tract that would have put Brother on notice that his property was being possessed by another. Sister did not fence the disputed tract, construct any structures on the tract, or post "no trespassing" signs.

■ We also note activities that do not involve the creation of permanent structures on the land can be sufficiently open and notorious as to put the legal owner on notice that his land is being adversely possessed. *See Miller v. Leaird,* 307 S.C. 56, 62, 413 S.E.2d 841, 844 (1992) (holding evidence supported Special Referee's finding of adverse possession when respondent paid the mortgages on the property, paid taxes on the property, and marked the boundary lines of the disputed property, and cut and sold timber on the tract in question for the statutory period). Here, however, no evidence was presented Sister paid a mortgage or property taxes on the disputed tract. In fact, Brother paid the property taxes on the disputed tract from 1994–2008. Furthermore, although Sister argues her sale of the timber from the disputed tract evidences her control over the tract, we are not persuaded that the sale of timber establishes Sister acquired the tract by adverse possession. The record reflects cutting on the disputed tract occurred only twice between 1994 and 2008 and did not occur throughout the entire statutory period. Additional-

ly, according to LaFrage, the cuttings on Brother's and Sister's properties occurred at roughly the same time, and Brother and Sister both received checks from the same timber company. No evidence was presented Brother was aware he was not receiving checks for the cuttings from the disputed tract.

Based on the foregoing, we find Appellants failed to prove Sister was in continuous, hostile, actual, open, notorious, and exclusive possession of the disputed tract for ten years. Accordingly, the circuit court did not err in finding Appellants failed to prove their trespass to try title and adverse possession claims.

## CONCLUSION

Based on the foregoing, the circuit court's order is

**AFFIRMED.**

SHORT and KONDUROS, JJ., concur.